## Bietsch's Estate

*John W. Hoke*, for appellant; *Edmund C. Wingerd*, contra.

DAVISON, P. J., January 28, 1935.—Maggie Bietsch died on March 5, 1934. At the time of her death there were accounts in the four banking institutions in Chambersburg which appeared to stand in the following names:

In the National Bank of Chambersburg the sum of $4,573.30 in the names of Mrs. George Bietsch and Mary Bietsch Arbaugh;

In the Chambersburg Trust Company the sum of $3,994.54 in the names of Mrs. George Bietsch and Mary Bietsch Arbaugh;

In the Valley National Bank the sum of $3,329.44 in the names of Mrs. George Bietsch and Mary Bietsch Arbaugh;

In the Farmers & Merchants Trust Company the sum of $2,998.93 in the names of Mrs. Maggie Bietsch and Mrs. Maurice Arbaugh.

Mrs. George Bietsch and Mrs. Maggie Bietsch are one and the same person and Mary Bietsch Arbaugh and Mrs. Maurice Arbaugh are one and the same person.

All of these accounts were appraised for inheritance tax purposes and from this appraisement this appeal is taken. The deposit in the National Bank of Chambersburg shows on its records the following notation: "Joint Owners— Mrs. George Bietsch, Mary Bietsch Arbaugh, joint owners subject to the check of either, the balance at the death of either to belong to the survivor." This notation is not signed by said parties but was made by some employe or officer of the bank at decedent's request. In this account the decedent notified the bank to pay no checks on this account unless signed by her, and a card was attached to the account which read: "Pay no checks unless signed by Mrs. George Bietsch." This account arose by reason of a savings account in the name of the decedent alone prior to this notation, so the money in the account was that of the decedent. This notation and direction as to checking was made more than a year before the death of Mrs. George Bietsch.

As we understood the attorney for the appellant at the argument of the case, she did not press her appeal insofar as this account was concerned, and in this

we think her course was proper. Her position had been that this was taxable, but only to the extent of one half of it under the provisions of the Act of May 16, 1929, P. L. 1795, sec. 1 (e). That paragraph reads as follows:

"Whenever any property, real or personal, is held in the joint names of two or more persons, except as tenants by the entirety, or is deposited in banks or other institutions or depositories in the joint names of two or more persons, except as husband and wife, and payable to either or the survivor upon the death of one of such persons, the right of the surviving person or persons entitled to the immediate ownership or possession and enjoyment of such property shall be deemed, prima facie, a transfer of one-half, or other proper fraction thereof, taxable under the provisions of this act, in the same manner as though this part of the property to which such transfer relates belonged to joint tenants or joint depositors as tenants in common, and had been bequeathed or devised to the surviving person or persons by such deceased joint tenant or joint depositor by will."

The difficulty with this position is that no transfer was made by Mrs. George Bietsch to take immediate effect. By her direction she had the account put in the name of both of them with the balance to belong to the survivor, but at the same time she kept full control of it by her other direction that she alone could check on that account. By this course she did not relinquish her full control on the fund, for she could have withdrawn it all during her lifetime without any action on the part of her daughter. It was not a completed gift or transfer under these circumstances, and at its best it could only have been a transfer of the balance remaining at the time of decedent's death and as of that date, and, hence, would be taxable under section 2(c) of the Act of June 22, 1931, P. L. 690. This account was clearly taxable and as to it the appeal is dismissed.

The accounts in the other three institutions were in a different position. They were all primarily accounts standing in the name of the decedent alone, and, hence, the money included in the three accounts at the time of her death was her money when placed in said accounts and nothing was added to them after the creation of the accounts in the joint names, unless it was by interest additions. In each of these accounts an agreement was executed by both of the parties properly placing it in a joint account but it is conceded that there was no consideration passed from Mrs. Arbaugh to Mrs. Bietsch at the creation of the joint accounts, that these accounts were a material part of her estate at the time of the transfer and of her death, and that the transfer from the individual account of the decedent to the said joint account was made within 1 year prior to the death of the decedent. All of these accounts were appraised for inheritance tax purposes in the said decedent's estate, and an appeal properly taken to this court from that appraisement.

The appraisement for said tax purpose was made pursuant to section 2(c) of the Act of June 22, 1931, P. L. 690, which reads as follows:

"When the transfer is of property made by a resident, or is of real property within this Commonwealth or of goods, wares, and merchandise within this Commonwealth, or of shares of stock of corporations of this Commonwealth, or of national banking associations located in this Commonwealth, made by a nonresident, by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death.

"If such transfer is made within one year prior to the death of the grantor, vendor, or donor of a material part of his estate, or in the nature of a final

disposition or distribution thereof, and without an adequate valuable consideration, it shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this clause."

It is argued to us by the counsel for the appellant that these deposits in the form in which they were made created a joint tenancy with a right of survivorship and, therefore, under Haggerty's Estate, 311 Pa. 503, and Lowry's Estate, 314 Pa. 518, they were not taxable. The creation of a joint tenancy with right of survivorship is still possible notwithstanding the provisions of the Act of March 31, 1812, 5 Sm. L. 395; Arnold v. Jack's Execs., 24 Pa. 57; Leach's Estate, 282 Pa. 545; and where such an estate is created in a joint bank account it is not taxable: Haggerty's Estate and Lowry's Estate, supra; but this is not governing in the instant case, for even if it be granted that this was a joint tenancy with right of survivorship, it having been created within 1 year of the death of decedent, it would have to stand the test of the Act of 1931, supra. In other words, if a transfer within a year would leave the fund taxable if to an individual, it would leave it taxable if in an account with right of survivorship. This brings us to the one question in the case: Are these three accounts, created within 1 year prior to the death of the creator of the funds, taxable?

The counsel for the appellant urged on us that the creation of these joint accounts may have constituted a gift inter vivos but certainly did not create a gift causa mortis, and that under these circumstances they are not taxable. We cannot see where the question of a gift causa mortis or a gift inter vivos changes the right to taxation under the provisions of the act as it applies to transfers made within the year prior to the death of the grantor. It seems to us very clearly to apply to any transfer within the year, declaring that such transfer shall be deemed to have been made in contemplation of death. A transfer, whether constituting a gift inter vivos or causa mortis, is a transfer within the meaning of this act, and no distinction can be drawn.

In Elliott's Estate, 113 Pa. Superior Ct. 350, 354, the court held that a gift causa mortis was subject to a transfer inheritance tax, and we cannot find in that opinion anything which differentiates between these two kinds of gifts. On the other hand the reasoning as to one seems to us to apply equally to the other. In the opinion itself the court places both on the same basis in principle when it says: "That a gift causa mortis is one 'in contemplation of death' is not open to question. 'Gifts inter vivos and gifts causa mortis differ in nothing, except that the latter are made in expectation of death, become effectual only upon the death of the donor and may be revoked—otherwise the same principles apply to each' ". In our opinion the legislature has said in an unmistakable manner that such a gift or transfer made within the year, by this very act constituted a gift in contemplation of death, and, hence, is taxable. The authority of the legislature to make such a gift one in contemplation of death, cannot be doubted and is as much in the legislative power as if they had referred to gifts causa mortis and gifts inter vivos by name. It was intended to cover any and all gifts and transfers so made and the present case comes under its provisions. We will, therefore, sustain the appraisement and dismiss the appeal.

Now, January 28, 1935, the appeal is hereby dismissed at costs of appellant and the appraisement is hereby confirmed.

From Albert Strite, Chambersburg, Pa.