**ESTATE of Edward V. BABCOCK, Deceased, Mellon National Bank and Trust Company and Mary A. Babcock, Executors, Petitioners,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 11848.**

United States Court of Appeals
Third Circuit.

Argued May 10, 1956.

Decided June 21, 1956.

**838**

Paul G. Rodewald, Pittsburgh, Pa. (Carl Cherin, Smith, Buchanan, Ingersoll, Rodewald & Eckert, Pittsburgh, Pa., on the brief), for petitioners.

John N. Stull, Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Grant W. Wiprud, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before MARIS, GOODRICH and KALODNER, Circuit Judges.

MARIS, Circuit Judge.

This is a petition for review of a decision of the Tax Court that there is a deficiency of $46,413.35 in the federal estate tax liability of the executors of the Estate of Edward V. Babcock. The facts were stipulated and may be summarized as follows:

The decedent died September 2, 1948, a resident of Allegheny County, Pennsylvania. Under his will, the residue of his estate was disposed of to his widow, Mary A. Babcock; his two sons, Edward Vose Babcock, Jr., and Fred C. Babcock; his nephew, Robert P. Babcock; charities and individuals to be designated by the testamentary trustees; and John K. Saxman, Ben L. Anderson, Harry B. Leech, E. O. Friday and C. R. Meadows, employees of corporations in which the decedent was interested. The widow filed her election to take against the will and thereby, under Section 8 of the Pennsylvania Wills Act of 1947, became entitled to one-third of the net value of her husband's entire estate.

The decedent's net estate for purposes of federal estate tax was computed after deducting, pursuant to section 812(e) (1) of the Internal Revenue Code of 1939,[1]

---

1. "§ 812. Net estate
   "For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

   \*   \*   \*   \*   \*

   "(e) [as added by Section 361 of the Revenue Act of 1948, c. 168, 62 Stat. 110] Bequests, etc., to surviving spouse
   "(1) Allowance of marital deduction
   "(A) In general. An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is in-

the value of the one-third interest in the estate passing to the widow.

The gross federal estate tax shown on the return was $1,453,654.11. This consisted of the net estate tax of $1,232,211.54 paid with the return, credit for state inheritance taxes of $219,609.27 (the maximum amount allowable under Section 813(b) of the 1939 Code based on the gross basic federal estate tax shown on the return), and credit of $1,833.30 for foreign death taxes. Because of adjustments not now in dispute, it was stipulated that all Pennsylvania inheritances taxes would be less than the allowable credit, and that a Pennsylvania estate tax would be due. $36,934.19 of the Pennsylvania inheritance tax represented a 2% inheritance tax upon the value of the one-third share of the estate passing to the widow.

On April 6, 1951, the executors filed their first account in the Orphans' Court of Allegheny County, Pennsylvania, showing payment by them to the Commonwealth of Pennsylvania on account of Pennsylvania inheritance taxes of $220,000. On April 20, 1951, they made a cash distribution to the widow in the amount of $726,827.05, which was one-half of the gross federal estate tax of $1,453,654.11 shown on the estate tax return. They stated that this was done to equalize the distributions from the estate, since the items making up the gross estate tax paid would be borne by the testamentary estate, not by the widow.

At the audit of the first account held May 23, 1951, the executors filed a petition for distribution, in which they stated that no petition for proration of tax would be filed. In their attached "Statement of Questions to be Determined by the Court" made as required by the rules of the Orphans' Court, the executors stated that one purpose of the proceeding was to obtain a decree of distribution from the Court of the entire share of Mary A. Babcock, and that this required a determination of whether her share was to be subject to proration or reduction by reason of any federal estate taxes. The executors' position was stated to be that her share was not subject to such reduction "and should be determined to be one-third (⅓) of the estate, real and personal, after deduction only of debts, administration expenses and any inheritance taxes attributable to her share and not absorbed by credit against the gross federal estate tax".

A trustee ad litem who had been appointed on May 8, 1951, to represent all unborn or unascertained beneficiaries, submitted his report to the Orphans' Court on October 5, 1951. He concluded that under Pennsylvania law the widow's share was not to be generally reduced for federal estate tax, but that the Pennsylvania inheritance tax on the widow's one-third share reduced the federal marital deduction and would thus subject that much of her widow's share to federal estate tax.

Prior to the audit, two of the employees, Saxman and Friday, filed exceptions on the ground that the widow's election to take against the will extinguished remainders to the sons of the decedent expectant upon a life interest bequeathed to the widow. Similar exceptions were filed by Anderson on October 2, 1952, and by Meadows on November 24, 1952. On October 2, 1952, Anderson also filed exceptions claiming that the cash distribution of $726,827.05 to the widow was improper and that the

cluded in determining the value of the gross estate.

\* \* \* \* \*

"(E) Valuation of interest passing to surviving spouse. In determining for the purposes of subparagraph (A) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this subsection—

"(i) there shall be taken into account the effect which a tax imposed by this chapter, or any estate, succession, legacy, or inheritance tax, has upon the net value to the surviving spouse of such interest; \* \* \*." 26 U.S.C.A. § 812.

executors should be surcharged in two-thirds of that amount.

Hearings on the various exceptions were held on November 24 and 26, 1952. In his testimony at the hearing, counsel for the executors stated on cross-examination by counsel for Anderson that in his opinion the share of the widow was not to be reduced for Pennsylvania inheritance tax. In their briefs on Anderson's exceptions, counsel for the executors took the position that the estate tax to be apportioned was the gross federal estate tax before credit, that the entire gross federal estate tax shown on the return (including the allowable credit for state inheritance tax) was paid for the will beneficiaries, that no part of that amount was to be borne by the widow, and that the widow could be charged only with any portion of the Pennsylvania inheritance tax attributable to her share which was not absorbed as part of the allowable credit for state death taxes. Arguments to the contrary were made by counsel for Anderson.

The auditing judge filed his opinion on May 27, 1953. In it he held that the $1,453,654.11 gross federal estate tax shown on the return which the executors had paid to the federal government on December 2, 1949, $1,232,211.54 in cash and $221,442.57 by credits for amounts previously paid by them in cash to Pennsylvania and Canada, was all paid for and on behalf of those who took as beneficiaries under the decedent's will, that no part of that burden was created by the widow's share, and that consequently the widow's share was not to be reduced by any part of that amount. At the conclusion of his opinion, he directed that a decree be entered in accordance with his opinion.

A supplemental petition for distribution was filed on July 21, 1953. Paragraph 9 of this petition requested the Court to decree to Mary A. Babcock one-third of the estate subject only to payment by her of her portion of any additional debts or administration expenses and any inheritance taxes attributable to her share and not absorbed by credit against the gross federal estate tax. Exhibit B to the supplemental petition, explaining the effect of the proposed distribution to Mary A. Babcock, showed that there was a total estate for distribution of $5,798,274.35, of which one-third, $1,932,758.12, was to be completely distributed to Mary A. Babcock; that the $1,453,654.11 which had been paid out as "Estate Tax per Return" was being charged altogether to the will beneficiaries; and that $2,411,862.12 remained for distribution to the will beneficiaries. Exhibit C to the supplemental petition showed that of the amount available for the will beneficiaries, $1,097,031.90 was to be presently distributed and that the balance of $1,314,830.22 was to be decreed back to the executors for further accounting. A decree of distribution was entered by the Orphans' Court on July 21, 1953, in exact accordance with the proposals made in the supplemental petition for distribution.

Exceptions to the decree of distribution were filed with respect to whether the widow's election extinguished the remainders to the decedent's sons expectant upon her life interest and with respect to the validity of the bequest to employees, relatives and friends, but no other exceptions were taken. The decree of the auditing judge was sustained by the court en banc on December 9, 1953. Appeals were taken to the Supreme Court of Pennsylvania on the effect of the widow's election, and on June 28, 1954, the Supreme Court reversed the Orphans' Court on that issue: In re Babcock's Estate, 1954, 378 Pa. 456, 106 A.2d 435.

The Orphans' Court on July 21, 1954, entered a revised decree of distribution. This decree confirmed the first account absolutely and directed the funds in the hands of the executors, $5,136,742.91 (the balance for distribution per supplemental account), to be paid in accordance with the schedule of distribution attached to the decree. The decree awarded the widow, Mary A. Babcock,

$1,932,758.12, one-third of the total estate, in the following terms:

> "To Mary A. Babcock, distributee, subject to payment by her of her portion of any additional debts or administration expenses and any inheritance taxes attributable to her share and not absorbed by credit against the gross federal estate tax, and subject to adjustment at the date of distribution on the basis of current market values to the extent that the distribution of particular listed stocks, bonds, or treasury bills is other than an exact one-third share: * * *"

Since the decree was in accordance with the Supreme Court mandate, it contained no provision for exceptions. The period for appeal has expired on the question of whether the widow is to be charged with any inheritance taxes other than in accordance with the terms of the decree.

In the notice of deficiency of federal estate tax the respondent computed the marital deduction under Section 812(e) (1) by reducing the one-third share of the estate going to the widow by the amount of estimated Pennsylvania inheritance tax on such share and also by the amount of federal estate tax resulting from his reduction of the marital deduction by the amount of this Pennsylvania inheritance tax. The executors filed their petition for redetermination with the Tax Court which decided in favor of the respondent. 23 T.C. 888.

■ The decision of the Tax Court must be reversed. Under the express terms of paragraph (E) (i) of section 812(e) (1) of the Internal Revenue Code of 1939 the marital deduction authorized by that section was to be reduced by the inheritance tax imposed by the Commonwealth of Pennsylvania upon the widow's interest in the estate only to the extent that the tax had an effect upon the net value *to the widow* of such interest. It is perfectly clear that in the present case the state inheritance tax had no effect whatever in the direction of reducing the net value *to the widow* of her interest in the estate. For by the final adjudication of the Orphans' Court of Allegheny County upon the executors' first account the entire federal estate tax, including the credit for all Pennsylvania inheritance taxes paid, was imposed upon the two-thirds of the estate which passed to the will beneficiaries and the widow's one-third $1,932,758.12, was awarded to her free and clear of that tax and subject only to any additional debts or administration expenses and any inheritance taxes attributable to her share "and not absorbed by credit against the gross federal estate tax." As we have seen it was stipulated by the parties that all Pennsylvania inheritance taxes to be imposed in the estate would be less than the allowable credit upon the federal estate tax, so that under the court's adjudication there can be no possibility of inheritance taxes attributable to the widow's share which will not be absorbed by credit against the gross federal estate tax.

■■ There has thus been a definitive final adjudication [2] by the state court having jurisdiction to make it that the widow's interest in this estate passes to her wholly undiminished by the inheritance tax which the Commonwealth of Pennsylvania has levied upon that interest at the rate of 2%. The Tax Court seemed doubtful whether this was what the Orphans' Court's adjudication intended but we have no doubt that it meant just what we have stated. This adjudication of the widow's property rights was binding upon the respondent and the Tax Court in determining the estate tax liability of the estate. Gallagher v. Smith, 3 Cir., 1955, 223 F.2d 218; Pitts v. Hamrick, 4 Cir., 1955, 228 F.2d 486; Weyenberg v. United States, D.C.Wis.1955, 135 F.Supp. 299. For the reasons which we gave in Gallagher v. Smith the abstract discussion by the Tax Court of the rules of Pennsylvania law to be deduced from other cases is wholly beside the point.

2. In re Davidow's Estate, 1951, 368 Pa. 45, 50, 81 A.2d 586, 589.

The only thing of significance here is the concrete application of that law which the Pennsylvania Orphans' Court has made to the facts of this particular case. That is the Pennsylvania law of this case and it deprives the respondent of legal support for his attempt to impose the additional federal estate tax which is here in controversy.

The decision of the Tax Court will be reversed and the cause will be remanded for further proceedings not inconsistent with this opinion.