## Todd Trust.

Argued November 25, 1947. Before MAXEY, C. J., LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

George W. Keitel, Deputy Attorney General, with him Harold E. Martin and T. McKeen Chidsey, Attorney General, for appellant.

Harris C. Arnold, with him Paul A. Mueller and Arnold, Bricker & Beyer, for appellees.

Cuthbert H. Latta filed a brief under Rule 61.

OPINION BY MR. JUSTICE PATTERSON, March 25, 1948:

This is an appeal by the Commonwealth of Pennsylvania from the decree of the court below striking from the inheritance tax appraisement of the assets of the estate of Robert B. Todd, deceased, the amount representing the present value of an *inter vivos* trust. Is there a transfer "intended to take effect in possession or enjoyment at or after death" [1] where settlor of an *inter vivos* trust directs payment of the income therefrom to his wife for life, in the event she predeceases him to himself for life, and remainder to designated charities, reserving the right of complete revocation although settlor predeceases his wife and the power of revocation has not been exercised?

Robert B. Todd, on April 1, 1932, made and executed an agreement with the Conestoga National Bank of Lancaster, named trustee therein, pursuant to which he transferred to trustee $20,000. to be held in trust, the

---

[1] Act of 1919, P. L. 521, Article I. Sec. 1, as amended, 72 P.S. Section 2301.

income therefrom to be paid to Mary Ellen Todd, wife of Robert B. Todd, during her lifetime. If settlor survived his wife, the trust was to continue and he was to receive the net income therefrom for his lifetime. Upon the death of the survivor, the principal of the trust was to be held for the benefit of designated charities.

Section 5 of the deed of trust provided: "The settlor reserves the right to revoke this trust at any time during his life, by written notice to the trustee, and the receipt of the settlor for any moneys or property surrendered to him pursuant to such notice shall be a full and complete release of the trustee thereof against all persons." Settlor upon several occasions added to the trust fund with the result that at the date of his decease his capital contributions thereto totaled $59,535.97, having an admitted value at that date of $60,063.25.

Settlor and trustee on June 20, 1939, entered into a supplemental trust agreement whereby the remainder gift to one of the charities was revoked so that the entire income of the trust would be equally divided between two remaining charities. On December 24, 1943, a further modification was made with reference only to administration of the fund and not in any way affecting the disposition of the estate.

Robert B. Todd died November 16, 1945, survived by Mary Ellen Todd, widow. On October 4, 1946, the transfer inheritance tax appraisement was filed in the Office of the Register of Wills of Lancaster County, based on the assets in the hands of trustee under the *inter vivos* deed of trust. The Conestoga National Bank of Lancaster and Mary Ellen Todd, as executors of the estate of Robert B. Todd, deceased, and as trustees and individually as beneficiaries respectively under both the deed of trust and decedent's will, the Lancaster General Hospital of Lancaster and the Evangelical Lutheran Church of the Holy Trinity of Lancaster, residuary beneficiaries under the deed of trust, appealed to the orphans' court to have the above appraisement stricken from the record

averring that the fund was not subject to transfer inheritance tax. The court below, relying upon *Dolan's Estate*, 279 Pa. 582, 124 A. 176, sustained the appeals. The Commonwealth has appealed, contending that the assessment was properly made for (1) settlor retained the power of complete revocation, and (2) settlor reserved such interest in the property that upon his death, there was a "transfer" within the meaning of the Act. The basic issue in this appeal is whether reservation by the settlor of the income for life after the death of his wife constitutes retention of an interest in the property so that upon his death, without regard to whether the life estate vested in possession, there was a transfer "of any property, real or personal, or of any interest therein . . . intended to take effect in possession or enjoyment at or after (his) death."

The Transfer Inheritance Tax Act, supra, provides: "A tax shall be . . . imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom in trust or otherwise, to persons or corporations in the following cases: . . . (c) When the transfer is of property made by a resident . . . by deed, grant, bargain, sale, or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death." In *Lines's Estate*, 155 Pa. 378, 393, 26 A. 728, this Court, in construing the Act of April 7, 1826, Section 1, a similar statute said: "The manifest purpose of our collateral inheritance tax law is to subject property, limited by deed in the manner stated in the statute, to taxation, because it is still substantially the property of the grantor, and does not actually pass, nor is it intended to pass to the collateral beneficiaries until his death, and hence it is essentially similar in that respect to a devolution of property by testacy or intestacy upon the death of the owner." In *Reish, Administrator, v. Commonwealth of Pennsylvania*, 106 Pa. 521, 526, it was said: "The commonwealth's right to collateral inheri-

tance tax is, therefore, not defeated by a conveyance of the title, nor by possession taken under it, if the enjoyment is intended to take effect at the death of the grantor. The enjoyment of real estate is not the exact equivalent of possession, nor is it so used in this statute; . . . One certainly cannot be considered, as in the actual enjoyment of an estate, who has no right to the profits or incomes arising or accruing therefrom . . . The policy of the law will not permit the owner of an estate, to defeat the plain provisions of the collateral inheritance law, by any device which secures to him, for life, the income, profits, and enjoyment thereof; it must be by such a conveyance as parts with the possession, the title, and the enjoyment in the grantor's life time." The test to be used in determining when a transfer is to be regarded as effective in possession or enjoyment was restated in *Glosser Trust*, 355 Pa. 210, 215, 49 A. 2d 401: "The criterion is not whether the beneficiaries are to acquire actual possession or enjoyment at or after the death of the donor but whether the latter has irrevocably parted with all his interest, title, possession and enjoyment in his lifetime." See cases therein cited in footnote 3.

Robert B. Todd, settlor, did not completely divest himself of all "interest" in the property. Instead, he reserved therein a vested right to the income for life, subject to being divested by his decease in the lifetime of his wife whose life interest was vested in possession. As executed, the deed provided for the income to the wife for life, remainder to settlor for his life, remainder to designated charities. His death was, therefore, contemplated to be an event which vested possession and enjoyment of the ultimate remainder interest. The court below was in error in directing that the appraisement be stricken from the record.

The decree of the court below is reversed, the appraisement for inheritance tax purposes is hereby reinstated; costs to be paid by trustee.